FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Oct 18, 2023

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

TRUMAN H.,[1]

Plaintiff,

v.

KILOLO KIJAKAZI, Acting
Commissioner of Social Security,

Defendant.

No.   2: 23-cv-00123-EFS

**ORDER REVERSING THE ALJ'S
DENIAL OF BENEFITS, AND
REMANDING FOR FURTHER
PROCEEDINGS**

Due to epilepsy, non-epileptic seizures, abscess, COPD, hypertension, anxiety, depression, post-traumatic stress disorder ("PTSD"), obesity, and agoraphobia, Plaintiff Truman H. is unable to work fulltime and applied for supplemental security income benefits.  He appeals the denial of benefits by the Administrative Law Judge (ALJ) on the grounds that the ALJ improperly assessed Plaintiff's credibility, the ALJ improperly analyzed the opinions of the treating

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

medical source, and the ALJ erred in failing to make specific findings regarding Listing 11.02. As is explained below, although the ALJ did not consequentially error as to his consideration of Listing 11.02, the ALJ consequentially erred when evaluating Plaintiff's symptom reports and by failing to evaluate two medical opinions. This matter is remanded for further proceedings.

## I.    Background

In June 2020, Plaintiff filed an application for benefits under Title 16, claiming disability beginning April 28, 2020, based on the physical and mental impairments noted above.[2]

After the agency denied Plaintiff benefits, ALJ Mark Kim held a telephone hearing in December 2021 at which Plaintiff appeared with his attorney and at which Plaintiff and a vocational expert testified.[3] Plaintiff testified that he did not complete high school but completed 11th grade and does not have a GED.[4] He said that he is 5'10" and weighs 234, he is right-handed, and he lives with his girlfriend.[5] He stated that his neurologist retired and he has an appointment to see a new one.[6]

_____

[2] AR 234-242, 283.

[3] AR 64-86.

[4] AR 69.

[5] *Id.*

[6] AR 69-70.

He is treated for mental health by his physicians and last saw a counselor in 2015.[7] Plaintiff testified that he is treated for a skin condition called hidradenitis and has required medication and surgery.[8] He explained that he has three types of seizures: grand-mal seizures, myoclonic jerks and psychogenic seizures.[9] He said that he worst seizures are the grand-mal seizures that occur 2-3 times a week, and that he also has myoclonic jerks that cause brief muscle spasms.[10] He said that the seizures happen less often with medication but he cannot carry sharp or heavy objects because it is a safety risk.[11] He stated that when he has a grand-mal seizures he will bite his tongue and frequently injure his back and that he will be dazed, confused, and need to sleep afterward.[12] Plaintiff said that because of allergies he needs to breath only clean air.[13] He said he suffers from agoraphobia, depression and anxiety, and is anxious about his epilepsy because his uncle died from complications from epilepsy.[14] Plaintiff stated that medications help his depression but his anxiety is

---

[7] AR 70.

[8] AR 71.

[9] *Id.*

[10] AR 72

[11] *Id.*

[12] AR 73.

[13] *Id.*

[14] AR 74.

harder to treat.[15] He explained that his agoraphobia makes it difficult to leave home and has caused him to cancel appointments.[16]  Plaintiff testified that he elected to give up his license because the seizures made it unsafe to drive.[17]

Plaintiff testified that his neurologist said he was one of his most difficult patients to treat and that his doctors were discussing whether he might be a candidate for a brain surgery or implantation of a Vagus nerve stimulator to treat his seizures.[18] He said that his medications make him groggy and confused and that he cannot speak clearly after taking them.[19] He said that he cannot cook anything on the stove when he is alone because of past accidents when he lost consciousness.[20]

After the hearing, the ALJ issued a decision denying benefits.[21] The ALJ found Plaintiff's alleged symptoms were not entirely consistent with the medical evidence and the other evidence.[22] As to medical opinions: the ALJ found:

---

[15] AR 75.

[16] *Id.*

[17] AR 76.

[18] AR 77.

[19] *Id.*

[20] AR 78.

[21] AR 13-34.  Per 20 C.F.R. §§ 404.1520(a)–(g), a five-step evaluation determines whether a claimant is disabled.

[22] AR 24-26.

- The September 2020 opinions of state agency consultant Merry Alto, MD to be substantially persuasive.

- The May 2021 opinions of state agency consultant Gordon Hale, MD, to be substantially persuasive.

- The September opinions of state agency evaluator Mary Koehler, MD, to be substantially persuasive

- The May 2021 opinions of state agency evaluator Renee Eisenhauer, PsyD, to be substantially persuasive.

- The December 2021 opinions of treating neurologist David Vossler, MD, to be not persuasive.[23]

As to the sequential disability analysis, the ALJ found:

- Step one: Plaintiff had not engaged in substantial gainful activity since June 3, 2020, the application date.

- Step two: Plaintiff had the following medically determinable severe impairments: epilepsy, psychogenic non-epileptic seizures, obesity, major depression, and generalized anxiety.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of the listed impairments at 11.02 (epilepsy), 9.09 (obesity), 12.04 (depressive disorder) and 12.06 (anxiety and obsessive-compulsive disorders).

---

[23] AR 26-27.

- RFC:  Plaintiff had the RFC to perform a full range of medium work

  with the following exceptions:

  he can lift and/or carry up to 50 pounds occasionally and 25 pounds
  frequently.  He can stand and/or walk for about 6 hours in an 8-hour
  workday.  He can sit for about 6 hours in an 8-hour workday.  He can
  never climb ladders, ropes, or scaffolds. He can occasionally climb stairs.
  He must avoid unprotected heights and commercial vehicle driving.  He
  should avoid more than occasional exposure to pulmonary irritants such
  as smoke or dust.  He can perform simple, routine tasks with specific
  vocational preparation of 2 or less with only occasional and simple
  changes.  He can have only occasional and superficial interaction with
  the public and coworkers.

- Step four: Plaintiff was not capable of performing past relevant work.

- Step five: considering Plaintiff's RFC, age, education, and work

  history, Plaintiff could perform work that existed in significant

  numbers in the national economy, such as an appointment clerk (DOT

  237.367-010), and a cashier II (DOT 211.462-010).[24]

Plaintiff timely requested review of the ALJ's decision by the Appeals

Council and now this Court.[25]

## II.    Standard of Review

The ALJ's decision is reversed "only if it is not supported by substantial

evidence or is based on legal error,"[26] and such error impacted the nondisability

---

[24] AR 19-28.

[25] AR 231.

[26] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g).

1    determination.[27] Substantial evidence is "more than a mere scintilla but less than a

2    preponderance; it is such relevant evidence as a reasonable mind might accept as

3    adequate to support a conclusion."[28]

### III.    Analysis

5        Plaintiff seeks relief from the denial of disability on several grounds. He

6    argues the ALJ erred when evaluating Plaintiff's subjective complaints, when

7    evaluating the medical opinions, and in failing to properly evaluate whether

8    Plaintiff's epileptic seizures met or equaled Listing 11.02.  The Commissioner

9    argues there was no error because the ALJ properly evaluated Plaintiff's subjective

10    complaints, the ALJ properly evaluated the opinion evidence and determined that

-------------------

[27] *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ), *superseded on other grounds by* 20 C.F.R. § 416.920(a) (recognizing that the court may not reverse an ALJ decision due to a harmless error—one that "is inconsequential to the ultimate nondisability determination").

[28] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

1   Dr. Vossler's opinion was not consistent with the record as a whole, and that the

2   ALJ properly considered that not all of Plaintiff's seizures were the result of

3   epilepsy and that the record showed that after February of 2020 Plaintiff's seizures

4   were well-controlled.  The Court disagrees with the Commissioner. As is explained

5   below, the ALJ erred in considering Dr. Vossler's opinion and in failing to consider

6   the combination of Plaintiff's epileptic and psychogenic seizures under both

7   Listings 11.02 and 12.00.

8

9   **A.    Step Three: Plaintiff establishes consequential error as to Listing**
        **11.02.**

10          *1.    Plaintiff's argument*

11          Plaintiff contends the ALJ erred by failing to consider, beyond a cursory

12   statement that he considered whether Plaintiff's impairments met or medically

13   equaled Listing 11.02.

14          If a claimant meets all of the listing criteria, he is considered disabled at

15   step-three. A claimant who does not meet the listing criteria may still be

16   considered disabled at step-three if his impairment(s) medically equal a listed

17   impairment.[29] Medical equivalence can be established three ways, one of which is:

18

19   _____

20   [29] Soc. Sec. Ruling 17-2p. *See also Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)

21   (requiring a claimant to show that the impairment meets (or medically equals) all

22   of the specified medical criteria, not just some of the criteria).

23

1  If an individual has an impairment that is described in the listings,

2  but either:

3      a.  the individual does not exhibit one or more of the findings

4          specified in the particular listing, or

5      b.  the individual exhibits all of the findings, but one or more of the

6          findings is not as severe as specified in the particular listing,

7  then we will find that his or her impairment is medically equivalent to

8  that listing if there are other findings related to the impairment that

9  are at least of equal medical significance to the required criteria.[30]

The ALJ is obligated to consider the relevant evidence to determine whether a claimant's impairments meet or equal one of the specified impairments set forth in the listings.[31] Generally, a "boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not [meet or equal a listing]."[32]  However, the ALJ need not recite the reasons for her step-three determination under the listings portion of the decision so long as the relevant

---

[30] *Id.*

[31] *Lewis v. Apfel,* 236 F.3d 503, 512 (9th Cir.2001); 20 C.F.R. § 416.920(a)(4)(iii).

[32] *Lewis,* 236 F.3d at 512; *see also Marcia v. Sullivan,* 900 F.2d 172, 176 (9th Cir.1990) (noting that the ALJ's unexplained finding at step three was reversible error).

evidence and underlying findings are discussed in the ALJ's decision.[33] Moreover, a boilerplate finding may be appropriate where a claimant fails to set forth any evidence for the ALJ to conclude an impairment could meet or equal a listing.[34]

### 1. The Applicable Listings

Listing 11.00 states: "Epilepsy is a pattern of recurrent and unprovoked seizures that are manifestations of abnormal electrical activity in the brain. There are various types of generalized and "focal" or partial seizures. However, psychogenic nonepileptic seizures and pseudo-seizures are not epileptic seizures for the purpose of 11.02. We evaluate psychogenic seizures and pseudo-seizures under the mental disorders body system, 12.00. In adults, the most common potentially disabling seizure types are generalized tonic-clonic seizures and dyscognitive seizures (formerly complex partial seizures)."

Listing 11.02 requires:

A. Generalized tonic-clonic seizures, occurring at least once a month for at least 3 consecutive months despite adherence to prescribed treatment.
OR

B. Dyscognitive seizures, occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment.
OR

C. Generalized tonic-clonic seizures, occurring at least once every 2 months for at least 4 consecutive months despite adherence to prescribed treatment; and a marked limitation in one of the following:
    1. Physical functioning; or

---

[33] *Lewis,* 236 F.3d at 513.

[34] *Gonzalez v. Sullivan,* 914 F.2d 1197, 1201 (9th Cir. 1990).

DISPOSITIVE ORDER - 10

      2. Understanding, remembering, or applying information; or
      3. Interacting with others; or
      4. Concentrating, persisting, or maintaining pace; or
      5. Adapting or managing oneself.

OR

D. Dyscognitive seizures, occurring at least once every 2 weeks for at least 3 consecutive months despite adherence to prescribed treatment; and a marked limitation in one of the following:

      1. Physical functioning; or
      2. Understanding, remembering, or applying information; or
      3. Interacting with others; or
      4. Concentrating, persisting, or maintaining pace; or
      5. Adapting or managing oneself. [35]

Further, the listings provide at Listing 12.00B6 that [Listing 12.07 shall be applied to evaluate] disorders [that] "are characterized by physical symptoms or deficits that are not intentionally produced or feigned, and that, following clinical investigation, cannot be fully explained by a general medical condition, another mental disorder, the direct effects of a substance, or a culturally sanctioned behavior or experience. These disorders may also be characterized by a preoccupation with having or acquiring a serious medical condition that has not been identified or diagnosed. Symptoms and signs may include, but are not limited to, pain and other abnormalities of sensation, gastrointestinal symptoms, fatigue, a high level of anxiety about personal health status, abnormal motor

---

[35] 20 C.F.R. pt. 404, subpt. P, app. 1, Listing 11.02 (citations omitted).

movement, pseudo-seizures, and pseudo-neurological symptoms, such as

blindness or deafness."

Listing 12.07 provides the following:

**Somatic symptom and related disorders (see 12.00B6), satisfied by A and B:**

A. Medical documentation of <u>one</u> or more of the following:
1. Symptoms of altered voluntary motor or sensory function that are not better explained by another medical or mental disorder;
2. One or more somatic symptoms that are distressing, with excessive thoughts, feelings, or behaviors related to the symptoms; or
3. Preoccupation with having or acquiring a serious illness without significant symptoms present.

AND

B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):
1. Understand, remember, or apply information (see 12.00E1).
2. Interact with others (see 12.00E2).
3. Concentrate, persist, or maintain pace (see 12.00E3).
4. Adapt or manage oneself (see 12.00E4).

The ALJ failed to articulate his reasoning as to Listing 11.02 and rather

made the following a cursory statement: "The undersigned considered listing 11.02

(epilepsy)."[36]  Moreover, the ALJ failed to articulate whether he considered

whether Plaintiff's pseudo-seizures met or equaled Listing 12.07.  But the court

finds that there is no consequential error resulting from the ALJ's failure.

---

[36] AR 21.

DISPOSITIVE ORDER - 12

1
2
3
4
5
6

     The Commissioner argues that the ALJ's findings at Step Two that Dr. Vossler stated in his treatment notes of October of 2021 that Plaintiff's "various seizures need to be sorted out" provides support for his reasoning.[37]   The Commissioner then notes that the ALJ also considered notes in the medical record which indicated that "Plaintiff's type of epilepsy was not clear due to conflicting EEG results and evidence of non-epileptic seizures."[38]

7
8
9
10
11
12
13
14
15
16

     The record is clear that Plaintiff suffers from epilepsy.  This was established according to Dr. Vossler by an EEG in 2016 which showed independent frontotemporal lobe activity, left greater than right, which is indicative of epilepsy and on which his diagnosis was based.[39]  However, in 2018, during a sleep study, Plaintiff was noted to have episodes of reported tongue biting while sleeping which did not show abnormal brain activity, thereby indicating additional pseudo-seizures which were discogenic nature.[40]  Additionally, a four-day EEG study performed in 2017 showed that on one night Plaintiff experienced four episodes of full or partial seizure for which the EEG reflected epileptiform morphology and that on another night he experienced one such episode, which again established that Plaintiff

17
18
19
20
21
22
23

---

[37] ECF 11 at 4-5, quoting AR 20.

[38] ECF 11 at 5, quoting AR 19.

[39] AR 751.

[40] *Id*.

suffered from epileptic seizures.[41] But during the 2017 study, there were also a number of episodes experienced by Plaintiff of twitching, leg jerking, and brief states of altered awareness during the night that occurred without epileptiform morphology and which were non-epileptic and presumably discogenic in nature.[42]

The ALJ made a specific finding in the record at step two that Plaintiff had mild limitations in the domain of understanding, remembering or applying information and a moderate limitation in the domains of interacting with others; concentrating, persisting or maintaining pace; and adapting or managing oneself.[43] Thus, the Plaintiff's limitations did not meet the B criteria necessary to meet or equal Listing 12.07. That would consequently mean that only the seizures suffered by Plaintiff which were epileptic in nature were able to be considered as sufficient to meet or equal a listing.

### 2. Summary

Because it was the statement of Dr. Vossler that it was not yet determined whether the nocturnal seizures which Plaintiff suffered were epileptic or discogenic in nature, it is not possible to credit that each such seizure suffered is properly counted as a seizure to be considered for the purposes of meeting Listing 11.02. Therefore, the ALJ's determination that Plaintiff's seizures do not meet or equal

---

[41] *Id.*

[42] *Id.*

[43] AR 22.

1    Listing 11.02 is supported by substantial evidence.  The Court will not remand as to

2    this issue.

3    **B.    Medical Opinions: Plaintiff established consequential error.**

4        Plaintiff challenges the ALJ's evaluation of Dr. Vossler's treating opinion.

5    As discussed below, because the ALJ failed to provide legitimate reasons supported

6    by substantial evidence to find Dr. Vossler's opinion not persuasive, the ALJ has

7    erred.

8        *1.    Standard*[44]

9        An ALJ must consider and evaluate the persuasiveness of all medical

10   opinions.[45] The factors for evaluating the persuasiveness of medical opinions include,

11   but are not limited to, supportability, consistency, relationship with the claimant,

12

13

14

15

16

17

18

19

20   _____

21   [44] 20 C.F.R. § 416.920c.

22   [45] *Id.* § 416.920c(a), (b).

23

DISPOSITIVE ORDER - 15

1    and specialization.[46] Supportability and consistency are the most important factors,

2    and the ALJ is required to explain how both of these factors were considered.[47]

3

4        2.    _Dr. Vossler's opinions_

5        Plaintiff presented to Dr. Vossler at Valley Medical Center Epilepsy Clinic

6    on July 7, 2020, upon a referral from her neurologist Dr. Nievara.[48]  Plaintiff

7    presented with the intractable spells of nocturnal shaking with tongue biting, and

8    diurnal muscle twitches which were nonepileptic and epileptic in nature and was

9    referred for consultation for surgery.[49]  Dr. Vossler diagnosed Plaintiff with

10    epilepsy with altered consciousness with intractable epilepsy, abnormal EEG, and

11    epilepsy undetermined as to focal or generalized, intractable.[50]  Dr. Vossler further

12    noted that it was unclear what type of epilepsy Plaintiff had and reasoned that

13    while it would be helpful to obtain additional EEG testing, he indicated that it was

14    not clear what type of epilepsy Plaintiff suffered from and that he felt it would be

15    best to try a different antiepileptic drug before administering another EEG or

16    recommending surgery.[51]  Dr. Vossler then prescribed a new antiepileptic and

17    advised Plaintiff to return in 3 months for follow-up.[52]  Plaintiff returned in three

18    months for his follow-up appointment with Dr. Vossler and his medications were

19    changed further.

20

21

22    _____

23    [46] _Id._ § 416.920c(c)(1)–(5). When assessing the medical source's relationship with



the claimant, the ALJ is to consider the treatment length, frequency, purpose, and extent, and whether an examination was conducted. The ALJ may also consider whether the medical source has familiarity with the other record evidence or an understanding of the disability program's policies and evidentiary requirements. *Id.* § 416.1520(c)(5).

[47] *Id.* § 416.920c(b)(2), (c)(1)–(2).
[48] AR 430.

[49] *Id.*

[50] AR 434.

[51] AR 434-435.

[52] *Id.*

1    On December 30, 2021, after having treated Plaintiff since July 7, 2020, Dr.

2   Vossler completed a medical source statement regarding Plaintiff's physical

3   limitations.[53]  Dr. Vossler stated that he last saw Plaintiff on October 1, 2021, and

4   was no longer seeing him; that he suffered from a mixture of probably epileptic

5   seizures and psychogenic seizures, and that seizures was his primary symptom.[54]

6   Dr. Vossler indicated that Plaintiff had on average 1 or 2 seizures per week which

7   lasted for 1-2 minutes each with no warning, and that postictal symptoms included

8   bitten tongue, muscle aches, sleepiness, and anger.[55]  Dr. Vossler stated that during

9   and immediately after seizures Plaintiff would need to put something soft under his

10  head, remove his glasses, loosen tight clothing, clear the area of hard or sharp

11  objects, and turn on his side to allow saliva to drain from his mouth.[56] Dr. Vossler

12  stated that Plaintiff was compliant with his medication and would have expected

13  side effects from his medications.[57] Dr. Vossler opined that Plaintiff had at least one

14  tonic-clonic seizure per month and at least one dyscognitive seizure per week, and

15  further opined that Plaintiff had marked limitations in the four domains comprising

16  the B criteria of Listing 12.07.[58]  Dr. Vossler opined that Plaintiff would be off-task

17  for 20% of an average work week and be absent on average for 8-12 hours a week.[59]

18    The ALJ discounted Dr. Vossler's opinion because 1) his opinion appeared to

19  be based on subjective reporting and speculation, 2) it was not consistent with

20  medical records which showed that Plaintiff's medication regimen was successful in

21  cutting his seizure activity in half by August 2020, and 3) Plaintiff failed to follow-

22  up with diagnostic testing.[60]

23

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

First, it is unclear why the ALJ reasoned that Dr. Vossler based his opinion on subjective reports.  Dr. Vossler's medical notes indicate that he based his diagnosis and treatment heavily on the results of three separate EEG studies which were performed in 2016, 2017, and 2020 and which documented the fact that Plaintiff suffered from seizures while sleeping.[61]  Indeed, there was ample objective medical documentation that Plaintiff suffered seizures, and the only issue in question was whether the seizures were epileptiform or discogenic.[62]

Turning to the second reason (that Dr. Vossler's opinion was contrary to medical notes that Plaintiff's medications were more successful in controlling his seizures after August 2020) a comprehensive review of the medical records reveals that the ALJ failed to consider the statement that Plaintiff's seizures were "well

---

[53] AR 759-762.

[54] *Id.*

[55] AR 760.

[56] *Id.*

[57] *Id.*

[58] AR 761.

[59] AR 762.

[60] AR 27.

[61] AR 430, 434, 751.

[62] AR 751.

DISPOSITIVE ORDER - 19

controlled" in their medical context.[60] Plaintiff's medical history reflects that he previously experienced up to four or five seizures a week and only experienced one to two seizures with better control. Clearly, the seizure medication reduced the severity and frequency of Plaintiff's seizures. However, the medical records reveal that he continued to have some severe and some minor seizures on a consistent basis.

On August 2, 2012, Plaintiff presented to Lynette Mc Canna ARNP for a follow-up regarding anxiety and stated that on Escitalopram his anxiety was improved but that he was having worsening of his tonic movements over the last year and questioned if the medication caused it.[63]  ARNP McCanna and Dr. McIntee diagnosed anxiety disorder and temporal lobe epilepsy.[64]  ARNP McCanna noted a significant improvement in Plaintiff's agoraphobia.[65] On August 31, 2021, Plaintiff presented to ARNP McKanna and she noted that Plaintiff had a history of epilepsy which was not well-controlled. [66]

On October 1, 2021, Plaintiff presented to Dr. Vossler for follow-up.[67] Dr. Vossler noted that Plaintiff had his medications changed due to daytime

---

[63] AR 716.

[64] AR 719.

[65] AR 721.

[66] AR 711.

[67] AR 750.

drowsiness but was functioning tolerably well.  Dr. Vossler noted that Plaintiff was having 1-2 grand-mal seizures per week rather than 3-5 per week and that he also suffered from myoclonic jerks which caused him to drop objects.[68]Dr. Vossler noted that an EEG performed in 2016 indicated epilepsy and that an EEG performed in 2017 and 2018 indicated the presence of additional non-epileptic seizures.[69]  Dr. Vossler noted that in postictal state for his epileptic seizures (type A) Plaintiff was lethargic and that in his postictal state for myoclonic spasms/jerks Plaintiff needed to nap.[70]  These treatment notes, written in the latter months of treatment prior to the hearing, clearly establish that with his new medication Plaintiff's seizures were much better controlled but remained, as ARNP McCanna noted, not well-controlled.  Thus, the records do not support the ALJ's reasoning that Dr. Vossler's opinions were inconsistent with improvements in Plaintiff's condition.

The ALJ's third reason for discounting Dr. Vossler's opinion (that Plaintiff failed to follow up on recommended testing) is also unpersuasive.  While the ALJ states that Plaintiff was noncompliant with treatment, Dr. Vossler expressly stated that Plaintiff complied with treatment requests.[71]  Moreover, the only statement made by Dr. Vossler, that an EEG was not performed in 2020, as he had requested

---

[68] *Id.*

[69] AR 751.

[70] AR 751-752.

[71] AR 760.

does not indicate that the failure for the test to be performed was due in any part to an action or inaction attributable to Plaintiff.  Notably, in 2020 the Covid-19 pandemic resulted in limitations in both medical testing and medical treatment. The record shows, at any rate, that the EEG testing was in fact performed later in 2020.

To the extent that the Commissioner raised a separate issue not articulated by the ALJ that the record contained conflicting information regarding the type of seizures suffered by Plaintiff, the Court disagrees.  The Commissioner's argument errs in that it articulates considerations not made by the ALJ.  Additionally, it displays a misunderstanding of the Plaintiff's medical record in particular and in the nature of seizures in general.  Moreover, the Commissioner's argument that the ALJ's finding is supported by a perceived ambiguity in the record is problematic because if such an ambiguity existed, the ALJ was obligated to develop the record further.  But the Court disagrees that the record is ambiguous.   The record indicates that Plaintiff suffers from a combination of both epileptic seizures and non-epileptic (discogenic) seizures. There is no opinion from any medical source which controverts the diagnosis by Dr. Vossler and other treating sources that Plaintiff suffers from epilepsy.  The fact that Plaintiff also suffers from discogenic seizures in no way conflicts with the objective testing which supports Plaintiff's diagnosis of epilepsy and the differing types or seizures are in no way mutually exclusive.  More importantly, while discogenic seizures cannot be considered for purposes of analyzing whether Plaintiff meets a listing, they must be considered as

to the limitations they cause in Plaintiff's ability to function. Dr. Vossler's statement that Plaintiff suffers seizures 1 or 2 times a week is consistent with the record as a whole.

Therefore, on this record, without more meaningful analysis, the ALJ's finding that Mr. Vossler's opinion is unsupported by the record is not a rational finding supported by substantial evidence. This error is consequential because if the RFC incorporated Mr. Vossler's opined pace and absenteeism limitations, Plaintiff would be unable to sustain work.

### *3.  Summary*

The ALJ erred when considering the medical opinions of Dr. Vossler. This error was consequential as Dr. Vossler opined that Plaintiff was unable to sustain workplace pace and attendance.  Because remand is required due to this error, and because the Court has found that credible objective evidence supports the fact that Plaintiff suffers from tonic-clonic seizures, the Court need not separately address Plaintiff's argument that the ALJ erred in assessing the credibility of his subjective complaints.

## C.    Remand:  Further proceedings are needed

Plaintiff submits a remand for payment of benefits is warranted.

A district court "ordinarily must remand to the agency for further proceedings before directing an award of benefits."[72] The "credit-as-true" rule, on

---

[72] *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017).

which Plaintiff relies, is a "rare and prophylactic exception to the ordinary

remand rule."[73] For the Court to remand for award of benefits, three conditions

must be satisfied:

> (1) the record has been fully developed and further administrative
> proceedings would serve no useful purpose; (2) the ALJ has failed to
> provide legally sufficient reasons for rejecting evidence, whether
> claimant testimony or medical opinion; and (3) if the improperly
> discredited evidence were credited as true, the ALJ would be required
> to find the claimant disabled on remand.[74]

Here, the third condition is met.  The ALJ failed to provide sufficient reasons

for rejecting Dr. Vossler's opinion.  However, further administrative proceedings

are necessary.  Although the record reflects that Plaintiff will be absent or off-task

due to seizures it is not clear to what extent her ability to maintain pace or

attendance will be impacted.  Therefore, the Court finds that further development

is necessary for a proper disability determination. Here, it is not clear what, if any,

additional limitations are to be added to the RFC. While Dr. Vossler is an expert

and his opinions should be given deference, the record is complex and involves

matters that seem to require additional explanation from a qualified medical

source.  Therefore, the ALJ should consider whether testimony should be received

from a medical expert pertaining to Plaintiff's epileptic and discogenic seizures,

---

[73] *Id.*

[74] *Garrison v Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).

and then consider any additional evidence presented, and make findings at each of the five steps of the sequential evaluation process.

### IV.    Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1.    The ALJ's nondisability decision is **REVERSED**, and this matter is **REMANDED** to the Commissioner of Social Security for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

2.    The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 9, 11 and 12**, enter **JUDGMENT** in favor of **Plaintiff**, and **CLOSE** the case.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 18th day of October, 2023.

_____
EDWARD F. SHEA
Senior United States District Judge